**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 08 CR 777-11 |
| | ) | |
| AARON WILLIAMS | ) | HONORABLE DAVID H. COAR |

**MEMORANDUM OPINION AND ORDER**

On November 3, 2009, the court issued a memorandum opinion and order that addressed the issues raised at Williams's suppression hearing.[1] The court deferred its ruling on Williams's motion to suppress in order to give Williams an opportunity to respond to the government's collective-knowledge argument, i.e., that DEA's wiretap investigation and surveillance evidence gave CPD Officers Simon and Plewa probable cause to search Williams and Howard's vehicle. The court has reviewed the parties' briefs on this issue, and Williams's motion to suppress the cocaine uncovered during that search is now DENIED.

**ANALYSIS**

It is well established that under the collective-knowledge doctrine, a police officer may rely on probable cause or reasonable suspicion known to other officers or agencies without knowing all the facts on which it is based. *See, e.g.*, *United States v. Groves*, 559 F.3d 637, 641 (7th Cir. 2009); *United States v. Parra*, 402 F.3d 752, 764 (7th Cir. 2005); *United States v. Nafzger*, 974 F.2d 906, 911 (7th Cir. 1992); *United States v. Celio*, 945 F.2d 180, 183 (7th Cir. 1991); *United States v. Valencia*, 913 F.2d 378, 383 (7th Cir. 1990); *United States v. Rodriguez*, 831 F.2d 162, 165-66 (7th Cir. 1987). An officer who stops, searches, or arrests a suspect on the basis of another officer or agency's information must "act in objective reliance on the

---

[1] The facts relevant to resolving Williams's motion are set forth in that opinion, and the court will not rehash them here except as needed. (R.249.)

information received," *Nafzger*, 974 F.2d at 911, which requires that "an objective evaluation of the information would allow a reasonable officer to believe that the action taken was appropriate." *Id.* at 916 (citing *United States v. Hensley*, 469 U.S. 221, 232-33 (1985)).

To apply the collective knowledge doctrine, the court determines (1) what knowledge can be imputed to Officers Simon and Plewa at the time of the disputed search, and (2) whether that knowledge was sufficient to justify the search. *See Parra*, 402 F.3d at 765-66.

### *Imputed Knowledge*

The government contends that DEA's probable cause can be imputed to Officers Simon and Plewa. Granting *arguendo* that DEA's information supports a finding of probable cause, Williams mounts three challenges to the use of the collective-knowledge doctrine to impute that information to Officers Simon and Plewa on the "wholly unique set of facts" in this case.

*First*, Williams argues that "an essential link in the chain that is the collective-knowledge doctrine" was broken because Officer Gutierrez told Officers Simon and Plewa that they had to develop their own probable cause to justify the stop and search. Williams further argues that Officers Simon and Plewa did not, as a matter of fact, rely on DEA's probable cause but rather relied on "the now-discredited charade" of the traffic stop to justify the stop and search. Thus, Officers Simon and Plewa could not have acted in "objective reliance" on DEA's putative probable cause. The court disagrees with this conclusion.

In *Rodriguez*, DEA and various local law-enforcement agencies launched a collaborative investigation into a suspected narcotics-trafficking ring. 831 F.2d at 164. Based on a wiretap investigation and surveillance, DEA agents gathered enough reasonable suspicion to stop the defendant's car. *Id.* at 165. Without conveying any details whatsoever, the agents issued an "admittedly skeletal message" requesting a "routine traffic stop" of the defendant by state

authorities. *Id.* Like the traffic stop effected by Officers Simon and Plewa, the stop in *Rodriguez* was a pretext, *see id.* at 166 n.3 ("[a] special request that a 'routine' traffic stop be conducted is, perhaps, an oxymoron"), but the Seventh Circuit held that—at least on these (allegedly) "unusual facts"—the officers could "reasonably" and "objectively" rely on DEA's information. *Id.* at 166.

Other circuits have reached the same conclusion when presented with facts that nudge their way toward the present case. *United States v. Ibarra-Sanchez*, 199 F.3d 753 (5th Cir. 1999), comes strikingly close. DEA agents observed a beige van coming and going from a known stash house and several men loading duffel bags from the house into the van under cover of night. *Id.* at 756. One of the agents instructed the dispatcher for the El Paso Police Department to issue a message that DEA needed assistance in stopping the van. *Id.* at 757. The agent "requested the dispatcher to tell the officers to form their own reasonable suspicion before stopping the van." *Id.* At the suppression hearing, the agent testified that "he did not want to reveal the existence of the DEA investigation to [the defendant] or any of the van's other occupants." *Id.* at n.1. However, the dispatcher failed to relay this instruction, and merely issued a radio bulletin "that a DEA agent had requested assistance in stopping the beige van because it was possibly transporting drugs or weapons." *Id.* at 757. The Fifth Circuit concluded that whether or not the dispatcher had conveyed DEA's request that the officers "form their own reasonable suspicion" was, in any event, "immaterial," since "under the 'collective knowledge' doctrine, the EPPD officers did not need to form their own suspicion." *Id.* at 760 n.6. Moreover, "[the agent's] request that the officers form their own reasonable suspicion does not negate the fact that he had sufficient suspicion to stop the van," and the court therefore concluded that the collective-knowledge doctrine "preserves the propriety of the stop." *Id.* at 760. Similarly, in *United States v. Ramirez*, the Ninth Circuit applied the collective-knowledge doctrine to uphold a

search of a vehicle made pursuant to an officer's radio request to "make a traffic stop . . . in order to avoid alerting the occupants . . . of an ongoing drug investigation."  473 F.3d 1026, 1029 (9th Cir. 2007).  The Ninth Circuit agreed with the district court that although this was "not the ordinary type of traffic stop," the dispositive question was "simply whether there existed probable cause for the search."  *Id.* at 1030.

It is clear that the question in collective-knowledge cases is whether a requesting officer has a sufficient basis for the action that another officer performs at his or her behest: where that is so, state or local officers, for example, can act as "agent[s]" or "extension[s]" of DEA, *see Rodriguez*, 831 F.2d at 166, even if the local officers are asked to conjure their own justification for the requested action.  This is not surprising; at least since the Supreme Court's clear mandate in *Whren v. United States*, 517 U.S. 806 (1996), probable cause has been understood as an objective inquiry to which an officer's subjective intentions are irrelevant.  Williams proposes a rule that would leave the collective-knowledge doctrine at loggerheads with *Whren* and current principles of probable-cause analysis.  The fact that Officers Simon and Plewa were told to develop their own probable cause to search Williams and Howard's vehicle does not mean that DEA's probable cause cannot be imputed to them as a basis for the search on which they could—and did—"objectively rely."

*Second*, Williams argues that even if Agent Chupik or DEA generally had enough information to establish probable cause, Officer Gutierrez did not; therefore, he could not have communicated his belief that there was a sufficient basis for the search to Officers Simon and Plewa.  The law does not impose such strong requirements on the application of the collective-knowledge doctrine; in particular, the fact that Officer Gutierrez conveyed DEA's request to Officers Simon and Plewa does not impose upon him the burden of acquiring personal

knowledge of the facts that gave rise to probable cause before conveying the request. As an initial matter, that requirement would make no sense, since the purpose of the collective-knowledge doctrine is to allow one officer to rely on the probable cause or reasonable suspicion of another officer without personally knowing all of the facts on which it is based. Furthermore, the Seventh Circuit has instructed that knowledge may be imputed to an officer "so long as the knowledge of the officer directing the [challenged action], or the collective knowledge of the agency he works for, is sufficient to constitute probable cause." *Valencia*, 913 F.2d at 383; *see also Rodriguez*, 831 F.2d at 165-66; *see generally* 2 Wayne R. LaFave, SEARCH AND SEIZURE § 3.5(b) (knowledge of requesting officer's agency as a whole should suffice for application of collective-knowledge doctrine). The question, then, is whether DEA had probable cause, not whether Officer Gutierrez did.

Of course, an agency's "aggregate" probable cause cannot just be imputed willy-nilly to its officers or to those of another agency. *See Parra*, 402 F.3d at 765 (law enforcement agency had "sufficient evidence in the aggregate to establish probable cause"). There must be some connection between the officer(s) on the beat and the ultimate source(s) of the agency's probable cause, or the collective-knowledge doctrine will degenerate into an end run around the Fourth Amendment. This point animates Williams's third challenge.

*Third*, Williams argues that there was insufficient communication between officers for the collective-knowledge doctrine to apply. Williams relies on *Nafzger* for the proposition that an officer who asks another officer to effect a stop, search, or arrest must convey to that officer his or her belief that there is sufficient information to justify the action. *See* 974 F.2d at 911. At the center of the alleged communication breakdown is Officer Gutierrez, who had insufficient

communication on two fronts: first, with Agent Chupik, or whoever else was privy to DEA's ostensible probable cause; and second, with Officers Simon and Plewa.

Williams makes too much of the communication requirement. In particular, *Nafzger* does not require Officer Gutierrez to communicate—or even to become personally aware of—the facts within DEA's knowledge that would justify a search of Williams and Howard's vehicle. It only requires that the officers involved were all working in concert, that they were part of a "coordinated investigation." *See Nafzger*, 974 F.2d at 914; *see also Ramirez*, 473 F.3d at 1033 ("[T]he purpose to be served by any requirement of communication among the officers is simply to 'distinguish[] officers functioning as a team from officers acting as independent actors who merely happen to be investigating the same subject.'" (quoting *United States v. Terry*, 400 F.3d 575, 581 (8th Cir. 2005))). The court finds that this requirement is satisfied in the present case, for the following reasons.

Officer Gutierrez was an active member of the Task Force and part of a coordinated investigation into Hinojosa's operation. In *Nafzger*, state law-enforcement offers conducted a traffic stop, ultimately at the request of DEA Agent Marquardt, who had firsthand knowledge of the basis for "reasonable and articulable suspicion." 974 F.2d at 913-14. The officers who conducted the stop were not in direct communication with Agent Marquardt; rather, they had been briefed by other agents, who did not have any direct communication with Agent Marquardt either. *Id.* The Seventh Circuit, however, emphasized that Marquardt "was an active member of the joint FBI state-investigative team" and that "[b]oth Marquardt and the briefing agents were part of a coordinated investigation;" thus, Marquardt's grounds for the stop could be imputed to the briefing agents and onward to the officers who conducted the stop pursuant to the briefing. *Id.* at 914. Here, Officer Gutierrez testified to his participation in the Task Force and, in

particular, the Hinojosa investigation; he knew of the wiretap evidence and the belief of his fellow officers that it established probable cause; he participated in surveillance of 2721 North Monitor and personally saw Williams and Howard driving to and from Hinojosa's stash house. This is sufficient participation in the investigation to impute to him DEA's collective knowledge. Williams's point that "there is no indication Chupik was ever in communication with Gutierrez, Plewa or Simon" is therefore unavailing.

Next, DEA's probable cause can be imputed from Officer Gutierrez to Officers Simon and Plewa: Officer Gutierrez briefed them and specifically conveyed to them DEA's belief that a substantial narcotics transaction was going to take place the next day at 2721 North Monitor. As for the information Officer Gutierrez gleaned from on-the-scene surveillance, he was in cell-phone contact with Officers Simon and Plewa, and conveyed to them an identifying description of the vehicle and its suspected contents. This, too, is sufficient. *See, e.g.*, *Parra*, 402 F.3d at 764 (officers' knowledge mutually imputable where officers are "in communication with each other while working together at a scene" (quoting *Nafzger*, 974 F.2d at 911)). Thus, both the wiretap and surveillance evidence can be imputed to Officers Simon and Plewa at the time they searched the SUV. To prevail on his motion to suppress, Williams will therefore have to show that this evidence, along with any evidence legitimately uncovered at the traffic stop, fail to provide a sufficient basis for the search that uncovered the cocaine.

### *Probable Cause*

"Under the automobile exception to the warrant requirement, a law enforcement officer need not have a warrant to search a vehicle when there is probable cause to believe that the search will uncover contraband or evidence of a crime." *United States v. Hines*, 449 F.3d 808, 814 (7th Cir. 2006) (quotations and citations omitted); *see also Maryland v. Dyson* 527 U.S. 465,

467 (1999) (automobile exception does not require exigent circumstances). "Determining whether probable cause exists involves a practical, common-sense decision whether, given all the circumstances set forth . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Hines*, 449 F.3d at 814 (quotations and citations omitted).

The government contends that its wiretap and surveillance evidence uncovered probable cause to believe that Williams and Howard had just purchased a substantial amount of narcotics. Agent Chupik's affidavit reveals that DEA had intercepted calls between Hinojosa and Barmbila, in which they discussed meeting at the "shop on Monitor" on July 16, 2008, with "the black guy." (R.1, ¶136.) Previously intercepted calls revealed that Hinojosa commonly referred to Howard as "the black guy." (*Id.*) And on the previous day (July 15, 2008), DEA had intercepted calls between Hinojosa and Barmbila, and between Hinojosa and Solano, in which they all arranged to meet at the "shop on Monitor." (*Id.* ¶¶120-125.) Surveillance observed them all park in the alleyway behind 2721 North Monitor and enter through the back door of the house. (*Id.* ¶¶ 126, 128, 130.) Shortly after Solano left the residence, CPD officers conducted a traffic stop and uncovered two kilograms of cocaine from Solano's vehicle. (*Id.* ¶132-33.) Solano positively identified Hinojosa from a photograph as the person from whom he purchased the cocaine. (*Id.* ¶134.) He also identified Barmbila as the person who he believed to be Hinojosa's supplier. (*Id.*) On the morning of July 16, 2008, surveillance witnessed Williams and Howard park their SUV in the alleyway behind 2721 North Monitor and enter the house through the back entrance carrying a shoebox; they also witnessed Hinojosa and Barmbila arrive at and enter the residence. (*Id.* ¶¶139, 141, 143.) A short time later, the officers saw Williams and Howard exit the house and return to the vehicle carrying what appeared to be the same shoebox. (*Id.* ¶144.) Officer Gutierrez participated in the surveillance, and his testimony at the suppression hearing

was consistent with Agent Chupik's affidavit.

The court finds that there was probable cause to search Williams and Howard's vehicle. Williams contends that the recorded telephone calls "only suggest a meeting was to take place and not a drug transaction," since no details of the transactions were specified either in plain language or in code: specifically, the calls do not reveal a drug, a weight, or a dollar amount for the contemplated transactions. But probable cause to believe that a drug transaction is about to take place, or has just taken place, does not require law enforcement to know these details, although the government must of course explain its grounds for believing that something other than an innocent meeting was in the works. The previously monitored calls and the ongoing investigation, including the arrest of Solano the day before, provided those grounds. DEA knew that Hinojosa had established dealings with Howard (*Id.* ¶¶45-48) and that he conducted narcotics transactions by arranging meets with his customers and Barmbila at the "shop on Monitor." Taking into account all that DEA's ongoing investigation had revealed about Hinojosa's operations at 2721 North Monitor, DEA reasonably believed that Williams and Howard went to 2721 North Monitor to purchase narcotics. Having observed them enter and exit the stash house, and return to their vehicle carrying what appeared to be the same container, the officers could conclude that there was a "fair probability" that a search of the vehicle would uncover narcotics. *See Hines*, 449 F.3d at 814. The search of the vehicle, including the shoebox found in the backseat, was therefore permissible. *See Arizona v. Gant*, 556 U.S. __, 129 S. Ct. 1710, 1721 (2009) (probable cause to believe vehicle contains evidence of criminal activity justifies search of any area of the vehicle in which the evidence might be found (citing *United States v. Ross*, 456 U.S. 798, 820-21 (1982))).

Moreover, as the court noted in its previous memorandum opinion and order, it would be

enough for the government to establish "reasonable suspicion," based on "articulable facts," that Williams and Howard had just purchased narcotics. *See Terry v. Ohio*, 392 U.S. 1 (1968). And it is clear that, at the very least, the facts detailed above gave law enforcement reasonable suspicion. This justified stopping Williams; ordering him out of the car, *see Pennsylvania v. Mimms*, 434 U.S. 106, 111 (1977); and frisking him for weapons. *See Terry*, 392 U.S. at 27; *United States v. Hernandez-Rivas*, 348 F.3d 595, 599 (7th Cir. 2003) (noting that "cocaine trafficking [is] a crime infused with violence"). Since a frisk would likely have revealed the marijuana in his pocket, a search of the passenger compartment incident to an arrest for possession of marijuana would have been justified. *See Gant*, 129 S. Ct. at 1719.

Either way, there was a sufficient rationale for the search that uncovered the cocaine in the back seat of the SUV, so Williams is not entitled to have that evidence suppressed.

## CONCLUSION

For the foregoing reasons, Williams's motion to suppress the cocaine is DENIED.


**Dated: November 24, 2009**

    Enter:

    /s/ David H. Coar

    _____

    David H. Coar

    United States District Judge